UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

WILBUR J. SAMUEL,                    )
                                     )
      Plaintiff,                     )
                                     )
v.                                   )     CASE NO. 2:12-cv-773-MEF-TFM
                                     )     [wo]
UNITED STATES OF AMERICA,            )
                                     )
      Defendant.                     )

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Pending before the Court is the Government's *Motion to Dismiss* (Doc. 15, filed December 21, 2012) and Plaintiff's *Motion Not to Dismiss* (Doc. 20, filed January 31, 2013). The Court has carefully reviewed the Motions, the briefs filed in support of and in opposition to the motions, and the supporting and opposing evidentiary materials.  For good cause, it is the RECOMMENDATION of the Magistrate Judge that the Government's Motion (Doc. 15) be GRANTED and Plaintiff's Motion (Doc. 20) be DENIED.

### I. JURISDICTION

The district court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. §§ 1346(b), 2671-2680 (Federal Tort Claims Act).  The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both.

### II. STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint.

*Gilmore v. Day*, 125 F. Supp.2d 468, 471 (M.D. Ala. 2000). It is a low threshold for the non-moving party to survive a motion to dismiss for failure to state a claim in order to reflect the liberal pleading requirements set forth in the Federal Rules of Civil Procedure. *Ancata v. Prison Health Services., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985); *see Gilmore*, 125 F.Supp.2d at 471 (citing *Ancata*). In deciding a 12(b)(6) motion to dismiss, the court will accept the petitioner's allegations as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L. Ed.2d 59 (1984); *Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 706 (11th Cir. 1998); *Roberts v. Florida Power & Light Co.*, 146 F.3d 1305, 1307 (11th Cir. 1998) (citing *Lopez v. First Union National Bank of Florida*, 129 F.3d 1186, 1189 (11th Cir. 1997)). However, "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004) (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)); *see also Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) (conclusory allegations and unwarranted deductions of fact are not admitted as true).[1]

### III. BACKGROUND

On September 6, 2012, Wilbur J. Samuel ("Samuel" or "Plaintiff") filed the instant wrongful death action stemming from the death of his father Willie James Samuel ("Willie

---

[1] *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Samuel"). *See* Doc. 1 at 1.  On March 5, 1990, Willie Samuel received a blood transfusion at the Department of Veteran Affairs ("VA") Birmingham Medical Center during a hospitalization for a broken hip.  *See* Doc. 1 at 2.  On July 17, 2002, Willie Samuel received a letter from the VA stating that the transfusion he received may have been infected with the hepatitis C virus ("HCV"), and emphasized the importance of being tested at the VA.  *See* Doc. 1 at 2; Doc 22 at 1.[2]  The letter indicated that at the time of the transfusion, the VA did not have any evidence that the blood was infected; however, since that time, the donor tested positive for HCV.  *See* Doc. 22 at 1.  It was noted that if Willie Samuel, in fact, tested positive for HCV, the VA would arrange for further testing, educational sessions on HCV, and instructions on filing a claim with the Veterans' Benefits Administration.  *Id.*

On July 22, 2002, Plaintiff took Willie Samuel to the VA Montgomery Medical Center for testing.  *See* Doc. 1 at 2.  On August 13, 2002, the VA called Willie Samuel and confirmed that he had tested positive for HCV.  *Id.*  Less than two weeks later, Willie Samuel died on August 25, 2002 due to complications from the HCV.  *Id.*  On June 27, 2006, Samuel submitted an Application for Dependency and Indemnity Compensation, Death Pension and Accrued Benefits by a Surviving Spouse or Child with the VA.  *See* Doc. 1-1 at 8.  On September 6, 2006 the VA noted that Samuel's application was still being processed.  *See* Doc 1-1 at 7.  On October 17, 2006, the VA sent Samuel a correspondence requesting a copy

---

[2] All documents submitted with Samuel's *Complaint* (Doc. 1-1) were also submitted with his *Motion Not to Dismiss* (Doc. 22).

of his birth certificate to be used as proof that he is Willie Samuel's dependent. *See* Doc. 1-1 at 8. On May 16, 2008, the VA sent Samuel a letter verifying that they still had not received a reply to their request for his birth certificate, and thus had closed his claim. *Id.* On June 10, 2008, Samuel resubmitted a new application to re-open his claim. *See* Doc. 1-1 at 9-16. On December 10, 2008, the VA sent Samuel a letter outlining the documents he was required to gather and provided other information about the claim process and what the evidence must prove for his claim to be granted. *See* Doc. 1-1 at 18-23.

On January 5, 2009, Samuel submitted an Application for Burial Benefits with the VA. *See* Doc. 1-1 at 24-25. On May 10, 2010, the VA sent Samuel a SF-95 form upon his request to file a claim under the  Federal Tort Claims Act ("FTCA") against the VA. *See* Doc. 1-1 at 27. On May 21, 2010, Samuel submitted his FTCA claim, and the VA subsequently verified the receipt of the application and notified Samuel that the investigation could take up to six months. *See* Doc. 1-1 at 26, 29, 32. On July 28, 2011, the VA concluded an initial review of Samuel's claim and indicated that the claim is likely going to be denied for two reasons. *See* Doc. 1-1 at 34. First, the VA stated that "Alabama law <u>only</u> grants authority to the <u>personal representative</u> to bring a wrongful death suit." *Id.* (citing Ala. Code 1975 § 6-5-410). Samuel was then told this could be cured by providing a letter of appointment from a probate judge showing that Samuel has been appointed as the personal representative of his father's estate. *Id.*

Second, the VA indicated that Samuel's claim will likely be denied because the FTCA

"requires that a claim against a Federal agency be filed within 2 years of the date the individual first becomes aware of the incident or episode giving rise to the claim.  *Id.*  The VA noted that considering the date Samuel received notice of his father's positive HCV test and his passing, "[f]or your claim to have been filed timely under the law, it would have to have been filed no later than August 25, 2004."  *Id.*  On August 16, 2011, the VA denied Samuel's claims on the grounds that his claim was not filed within the two year statute of limitations expiring on August 25, 2004, but rather it was filed on May 21, 2010.  *See* Doc. 1-1 at 36.

On February 13, 2012, Samuel filed a Request for Reconsideration of the VA's FTCA denial.  *See* Doc. 1-1 at 2.  On March 9, 2012, the VA reconsidered Samuel's FTCA claim, and denied it once again due it being time barred.  *See* Doc. 1-1 at 1.

## IV. DISCUSSION AND ANALYSIS

The Government argues that Samuel's case is due to be dismissed for lack of subject matter jurisdiction.  *See* Doc. 15.  First, the Government contends that Samuel "did not timely exhaust his mandatory administrative remedies under the [FTCA]."  *Id.*  Next, the Government avers that Samuel "lacks standing to assert a wrongful death claim in his own name for his father's death."  *Id.*  Finally, the Government argues that Samuel "cannot represent the estate of his father in a pro se capacity."  *Id.*

Samuel does not rebut these assertions.  *See* Doc. 21.  Samuel admits that the instant action as well as his administrative claim were not timely filed; however, he contends that

the VA's ten year lapse in notifying his father of the tainted blood transfusion was not timely either.  *See* Doc. 21 at 1.   Additionally, Samuel claims that the VA has "consistently, deliberately, and purposefully mislead and misinformed me and my family repeatedly in regards to my father's death and their negligence." *See* Doc. 21 at 2.  Samuel asks the court to look beyond his ignorance of the law and view the facts presented before it.  *Id.*  Samuel asserts that he had no intention of filing this claim *pro se*, but after consulting several attorneys, none would take his case due to the statute of limitations issue. *See* Doc. 21 at 3.

The FTCA states:

A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b).  The general rule is that a FTCA claim "accrues at the time of the plaintiff's injury." *U. S. v. Kubrick*, 444 U.S. 111, 120, 100 S. Ct. 352, 358, 62 L. Ed. 2d 259 (1979).  However, the Eleventh Circuit has noted that "applying this rule in medical malpractice cases would lead to unjust results" and as a result the "statute of limitations period in medical malpractice actions is tolled until the plaintiff possesses the critical facts of [his] injury and its cause." *Price v. United States*, 775 F.2d 1491, 1493 (11th Cir. 1985). "Thus, a medical malpractice claim under the FTCA accrues when the plaintiff is, or in the exercise of reasonable diligence should be, aware of both [his] injury and its connection with some act of the defendant." *Id.* at 1494 (citing *Lavellee v. Listi*, 611 F.2d 1129 (5th Cir.

1980); *Burgess v. United States*, 744 F.2d 771, 773 (11th Cir. 1984)).  The courts note that upon such awareness a plaintiff will no longer be at the mercy of those who may have caused the injury and that "[t]here are others who can advise the plaintiff whether [he] has a valid legal claim, and [he] need only ask." *Id.* at 1493 (citing *Kubrick*, 444 U.S. at 122, 100 S. Ct. at 359).

Here, Willie Samuel received a letter on July 17, 2002 from the VA indicating that his 1990 blood transfusion may have been infected with HCV.  After being tested for HCV, Willie Samuel was notified on August 13, 2002 that the test results came back positive for HCV.  Less than two weeks later, Willie Samuel died due to complications from the HCV on August 25, 2002.  No later than August 25, 2002, Samuel and his family became aware of both Willie Samuel's death and its connection to an act of the Government – the infected blood transfusion.  In line with the VA's FTCA claim denial, this Court finds that for Samuel's claim to be timely filed, it must have been filed by August 25, 2004.

Samuel claims that the VA has "consistently, deliberately, and purposefully misled and misinformed" him and his family regarding Willie Samuel's death and their negligence. *See* Doc. 21 at 2.  Courts have allowed tolling of the statute of limitations where defendants fraudulently conceal their culpability.  *See Eaton v. Keith*, 154 F. App'x 844 (11th Cir. 2005). "When the fraud goes undiscovered because the defendant has taken positive steps after the commission of the fraud to keep it concealed, then the statute of limitations is tolled until the plaintiff actually discovers the fraud. 'Fraudulent concealment must consist of affirmative

acts or representations which are calculated to, and in fact do, prevent the discovery of the cause of action.'" *Id.* at 848 (citing *In re Int'l Admin. Servs., Inc.,* 408 F.3d 689, 701 (11th Cir. 2005) (citations omitted)). Samuel asserts that the VA "purposefully misinformed [him] of the remedies of which [he] had to exhaust for justice of [his] father's death." *See* Doc. 21 at 2. However, the only evidence presented are the time delays by the VA in resolving each claim filed, and the confusion between filing an Application for Dependency and Indemnity Compensation or a FTCA claim. *See* Doc. 1 at 3. Samuel states that "I had been submitting claims since this tragic incident happened however, continuing to be misinformed for nearly four years as documented as early as September 06, 2006." *Id.*

Samuel makes several claims regarding whether the VA was actually processing his applications, requests for additional documents or proof, and which applications were submitted and received; however, each of these claims are untimely. Each alleged misleading correspondence all began no earlier than September 6, 2006 when Samuel filed his first claim with the VA. Despite any delays or confusion about which application he was supposed to file, Samuel did not begin this process until four years after his father died. No evidence before the Court shows the VA took any "affirmative acts or representations which are calculated to, and in fact do, prevent the discovery of the cause of action." *Eaton*, 154 F. App'x at 848. Due to the VA's July 2002 letter admitting the blood transfusion they performed may have contained tainted blood, and Willie Samuel's August 2002 passing, Samuel at that point "is, or in the exercise of reasonable diligence should be, aware of both

[his father's] injury and its connection with some act of the defendant." *Price*, 775 F.2d at 1494.  Armed with this information Samuel was no longer at the mercy of the VA, "[t]here are others who can advise the plaintiff whether [he] has a valid legal claim, and [he] need only ask." *Id.* at 1493 (citing *Kubrick*, 444 U.S. at 122, 100 S. Ct. at 359).  The fact that Samuel failed to seek legal advice when empowered with the information to do so, does not allow this Court to tax the Government with fraudulently concealing the cause of action. This Court finds that the statute of limitations for Samuel's claim began to accrue beginning on August 25, 2002.

The Court sympathizes with all that Samuel has endured with his father and mother in such a short time span.  However, in enacting the FTCA, Congress chose to exercise its power by waiving the United States' sovereign immunity and "prescrib[ing] the terms and conditions on which [the United States] consents to be sued, and the manner in which the suit shall be conducted." *Beers v. State*, 61 U.S. 527, 529, 15 L. Ed. 991 (1857).  The FTCA acts as a limited waiver of the United States' sovereign immunity to permit persons injured by a federal employee to sue the Government for damages in federal court.  *Molzof ex rel. Molzof v. United States*, 502 U.S. 301, 304-05, 112 S.Ct. 711, 116 L.Ed.2d 731 (1992).  It has long been held that "the circumstances of its waiver must be scrupulously observed, and not expanded, by the courts."  *Suarez v. United States*, 22 F.3d 1064, 1065 (11th Cir. 1994) (citing *Kubrick*, 444 U.S. at 117-18, 100 S.Ct. at 357); *see also United States v. Nordic Vill. Inc.*, 503 U.S. 30, 34, 112 S. Ct. 1011, 1014-15, 117 L. Ed. 2d 181 (1992) (citing *McMahon*

*v. United States,* 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26 (1951) (citations omitted))

(stating that the traditional principle is that the Government's consent to be sued "must be

'construed strictly in favor of the sovereign,' and not 'enlarge[d] ... beyond what the

language requires'"); and *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 94, 111 S. Ct. 453,

456, 112 L. Ed. 2d 435 (1990) (citing *Library of Congress v. Shaw,* 478 U.S. 310, 106 S.Ct.

2957, 92 L.Ed.2d 250 (1986)) (stating that a condition to the waiver of sovereign immunity

"must be strictly construed").

The two-year statute of limitations is one of multiple prerequisites to filing a FTCA

claim against the Government. *Suarez*, 22 F.3d at 1066.  With "no indication that Congress

intended to waive its sovereign immunity under conditions other than those expressly

provided in the FTCA," this Court cannot create an exception. *Id.*  As a result, this Court

finds that Samuel's suit is time barred; thus, this Court lacks subject matter jurisdiction over

the instant action.

The Government additionally argues that Samuel "lacks standing to assert a wrongful

death claim in his own name for his father's death" because he is not the personal

representative of his father's estate. *See* Doc. 15.  The Government also argues that Samuel

"cannot represent the estate of his father in a pro se capacity." *Id.*  However, as set forth

above, this Court lacks jurisdiction to make a ruling on these issues.

## V.  CONCLUSION

Accordingly, it is the **RECOMMENDATION** of the Magistrate Judge that this action

be **DISMISSED** with prejudice for lack of subject matter jurisdiction, and that the Government's Motion (Doc. 15) be **GRANTED** and Plaintiff's Motion (Doc. 20) be **DENIED**.

It is further **ORDERED** that the parties are **DIRECTED** to file any objections to the said Recommendation not later than **April 19, 2013**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 5th day of April, 2013.

/s/Terry F. Moorer
TERRY F. MOORER

UNITED STATES MAGISTRATE JUDGE